UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERBERT JUNIOR,<br><br>                Petitioner,<br><br>      - *against* -<br><br>WARDEN,<br><br>                Respondent. | 13 CV 9164 (NSR) (PED)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

TO THE HONORABLE NELSON STEPHEN ROMÁN, United States District Judge:

## I. INTRODUCTION

Petitioner Herbert Junior ("petitioner" or "defendant"), acting pro se, seeks a writ of habeas corpus with respect to his guilty plea and conviction of murder in the second degree and one count of criminal possession of a weapon in the third degree. Petitioner fatally stabbed Ashley Osbourne at her home in the Town of Fallsburgh, Sullivan County, New York and thereafter made statements and a confession concerning the incident to police.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated February 26, 2014. For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[1]

### A. Procedural History

On December 30, 2009 a Sullivan County Grand Jury returned an indictment charging

---

[1] Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet."; "Dkt. 1"), the State Court Record ("SR"; "Dkt. 9") and the State Court Transcript ("ST"; "Dkt. 10").

petitioner with murder in the second degree (N.Y. Penal Law § 125.25) and criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02). A special information also charged defendant with having been previously convicted of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39) on August 27, 2003 having been sentenced to an indeterminate term of 2 1/3 to 7 years incarceration. On December 31, 2009 petitioner was arraigned on the indictment and pled not guilty. On March 31, 2010 the Sullivan County Grand Jury returned a superceding indictment charging defendant with murder in the first degree (N.Y. Penal Law § 125.27), criminal sexual act in the first degree (N.Y. Penal Law § 130.50), murder in the second degree (N.Y. Penal Law § 125.25), and criminal possession of a weapon in the third degree (N.Y. Penal § 265.02). Again, a special information also charged defendant with having been previously convicted of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39) on August 27, 2003 having been sentenced to an indeterminate term of 2 1/3 to 7 years. On April 1, 2010 Petitioner was arraigned on the superseding indictment and pled not guilty to all charges.

A *Huntley* hearing was held on May 17 and May 20, 2010 and a *Mapp* hearing was held on June 8, 2010. Following the conclusion of these hearings, the court orally held that all statements made by the defendant were admissible and all evidence seized pursuant to search warrants were also admissible. On June 15, 2010 a *Wade* hearing was held and the court found that there were no impressible identification procedures used.

The District Attorney and petitioner negotiated a plea, which included the condition that defendant waive his right to appeal from any of the orders of the court, including but not limited to, the *Huntley*, *Mapp*, and *Wade* decisions, all suppression issues, the voluntariness of his statements, and his right to file a habeas corpus petition. On July 27, 2010 petitioner pled guilty

to murder in the second degree (reduced from murder in the first degree) and one count of criminal possession of a weapon in the third degree. In accordance with the plea agreement, petitioner was sentenced on September 21, 2010 to an indeterminate term of incarceration of 23 years to life, as a second felony offender. Petitioner is currently incarcerated at Great Meadow Correctional Facility in Comstock, New York.

## B.     *Huntley* Hearing

On May 17 and May 20, 2010 a *Huntley* hearing was held to assess the voluntariness of petitioner's statements made to police the night of October 10, 2009 and statements made the following day of October 11, 2009. In brief, the evidence at the hearing established the following facts.

On October 10, 2009 at approximately 10:30 p.m., Investigator Fiordaliso and Investigator Nicholas went to petitioner's apartment to ask him about a fight that occurred the previous night. Petitioner agreed to be brought down to the Village of Monticello Police Department for further conversation. Investigator Fiordaliso advised petitioner of his *Miranda* rights, which petitioner waived. Initially they discussed the fight which occurred the previous night and then began to speak about the murder of Ashley Osbourne.

Petitioner maintained he had met the victim a few weeks prior while at Bum and Kel's, a bar in Loch Sheldrake. Petitioner stated the victim was sick and wanted heroin. He stated that the victim did not enter the bar but rather left with two Hispanic males and petitioner did not know what happened to her after that. During the hearing the investigators contended that petitioner was free to leave at this point of their questioning, was provided a drink, was able to make a phone call to his wife, and was given cigarettes to smoke.

At approximately 4:38 a.m. petitioner was asked, and he agreed, to submit to a polygraph

examination because of several discrepancies in his statements. The investigators drove petitioner to the New York State Police barracks in Liberty. On the way, the investigators provided petitioner with food from McDonald's, cigarettes, and petitioner was not restrained nor questioned in any way. Once at the barracks, the investigators gave petitioner a blanket, additional cigarettes, and allowed petitioner to sleep.

At approximately 10:36 a.m. petitioner began to confess to killing the victim. Petitioner stated he was at the victims residence, they were both naked, and he wanted oral sex. However, he stated the victim did not want to give him oral sex but rather wanted to know if he would provide her with heroin after having sex. Petitioner stated the victim became irate and stabbed him in his leg with a small knife. As petitioner was being attacked he was able to get the knife away from her and then stabbed the victim in the eye. He began wailing and hacking her, hit her with a mirror, became enraged and angry, and stuck the victim in the back of the neck with a screwdriver. Petitioner made these statements at approximately 11:19 a.m. The investigators gave petitioner lunch after he made the above statements. The investigator again advised petitioner of his *Miranda* rights, which he once again waived. Petitioner memorialized his statements on audio tape.

At the conclusion of the hearing the court orally concluded that petitioner's statements were voluntary and admissible.

> THE COURT: ...the State Police, in this case, took every effort to make sure that Kato, now known as the defendant herein, "Mr. Herbert Junior," was not taken advantage by sleep deprivation...by food deprivation or water deprivation for over 13 hours...took every effort possible to make sure that Kato, now known as Mr. Junior, was refreshed and comfortable for his further interviews with the police...defendant was not being physically subjected to any type of conditions that might affect his knowing, intelligent and voluntary waivers of his rights, any physical condition that might distort his memory...

> THE COURT: The interview process continues, the defendant is not free to go, statements are taken from him, the exhibits offered by the People are admitted into evidence, for the purposes of the *Huntley* hearing, they are admissible, the court finds they are admissible. The statements taken by the defendant were not taken in violation of any of his rights, *Miranda* or otherwise. They were not the product of police coercion. They were not the product of any physical or psychological depravation of this defendant.

(ST 274-281).

C.      **Plea Proceeding, Execution of Waiver of Right to Appeal, and Sentencing**

After the court rendered its decisions with regard to the pre-trial hearings, the District Attorney and petitioner negotiated a plea agreement. On July 27, 2010 petitioner pled guilty to murder in the second degree (reduced from murder in the first degree) and one count of criminal possession of a weapon in the third degree. During his plea allocution, petitioner explicitly acknowledged that he had agreed to waive any appeals in conjunction with his guilty plea. Petitioner executed, in open court, a Waiver of Right to Appeal.

> THE COURT: Okay. Do you understand by this plea arrangement here today, this plea agreement, that you are avoiding a sentence of life without parole?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And that's one of the major things you had in mind, accepting this plea bargain, is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you satisfied with the legal advice that Mr. Proyect has given you with respect to the case, the law, the plea bargain and the waiver of appeal?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that this plea bargain also includes a waiver of appeal, that the waiver of appeal means separately and distinctly that you are giving up your rights to appeal your conviction, your sentence, any

pretrial rulings, anything in this case, to any court whatsoever, Federal or State. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And that is part of your plea bargain just as the life without parole is being given up, you're also - - the People are giving that up, you're giving up your rights to an appeal, right?

THE DEFENDANT: Yes

THE COURT: Okay. Is anyone forcing, threatening or coercing you in any way into giving up all your rights to a jury trial, to the appeal process or anything like that?

THE DEFENDANT: No.

THE COURT: Have any promises been made to you in exchange for a waiver of all those rights including your rights to an appeal other than the promise that there would be a sentence of no more than 23 to life? Any other promises made to you?

THE DEFENDANT: No promises.

THE COURT: And did you in fact sign the written waiver of appeal here in open court this morning in the presence of your attorney, Mr. Proyect?

THE DEFENDANT: Yes.

THE COURT: Okay. The record will reflect that the defendant did in fact sign and he does admit that he signed the waiver of appeal, and the Court too will witness the waiver of appeal as being a knowing - - knowing, intelligent and voluntary waiver of appeal.

THE COURT: Now, do you have any questions now that you'd like to ask Mr. Proyect regarding anything that's important to you before I ask you how do you plead to the reduced charge of Murder in the Second Degree and Count 5, Possession of a Weapon in the Third Degree, any questions of Mr. Proyect?

(The DEFENDANT shakes head negatively).

(ST, July 27, 2010, pp. 7-9).

In pertinent part, the waiver form executed by petitioner provided as follows:

> I, the undersigned defendant, in consideration of and as part of the favorable plea and sentencing agreement being entered into, hereby acknowledge that I have been advised of, and waive, all of the rights below...
> I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence...
> In addition to the above issues, my waiver also includes, but is not limited to:
> 
> (1) the form, content and legal sufficiency of the indictment(s)/superior court information;
> (2) any decision and/or order of the Court on any motions made, or pending;
> (3) the voluntariness of any statements made by myself or the constitutionality of any identification procedure conducted;
> (4) the sufficiency of the plea allocution;
> (5) any other matters which I may have an appeal as of right or otherwise in any State or Federal Court or may collaterally attack in any State or Federal Court, specifically, that I have been advised of an waiver my right to file motions to vacate my conviction and to set aside my sentence under CPL Article 440 and 330, my rights to file habeas corpus petitions to challenge my conviction in state and federal court, Writs of Coram Nobis and any right I may have to file any motions or application attacking my conviction in state or federal court...
>
> I waive all these rights voluntarily, knowingly and intelligently and without coercion by anyone, after being duly informed of them by my attorney standing beside me. I have had a full opportunity to discuss these matters with my attorney and to raise them with the court, and any questions I may have have been answered to my satisfaction. I am waiving my right to appeal to mark the end of my case.

(SR154-155).

On September 21, 2010, in accordance with his plea agreement, the court sentenced petitioner, as a second felony offender, to an indeterminate term of 23 years to life.

### D. **Direct Appeal**

On or about September 21, 2010, petitioner (by and through counsel) timely appealed his conviction to the New York Supreme Court, Appellate Division, Third Judicial Department. (SR018). The Appellate Court held that review of the County Court's suppression ruling was

-7-

precluded by defendant's waiver of his right to appeal. People v. Junior, 947 N.Y.S.2d 919 (2012). The court concluded that defendant's waiver of the right to appeal was knowing, voluntary and intelligent. Id. The court further determined that the waiver was made with the assistance of counsel and it was distinguished from other rights that defendant forfeited upon pleading guilty and that preplea rulings were specifically included as part of the waiver. Id.

On or about August 11, 2012 petitioner's counsel submitted a letter requesting leave to appeal to the New York Court of Appeals. (SR215). On October 30, 2012 the Court of Appeals denied petitioner's request for leave to appeal. People v. Junior, 955 N.Y.S.2d 559 (2012).

### E. The Instant Habeas Petition

Petitioner timely[2] filed the instant Petition for a Writ of Habeas Corpus on or about December 23, 2013,[3] wherein he seeks habeas review of the claim he raised on direct appeal.

## III. DISCUSSION

### A. Applicable Law

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

---

[2] See 28 U.S.C. § 2244(d)(1).

[3] The date on which petitioner placed the instant Petition in the prison mailing system. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v. Lack, 487 U.S. 266 (1988), to pro se petitions for habeas relief).

accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

1. *Timeliness*

AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. See 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his

petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

2. *Exhaustion*

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2255(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

-10-

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). The Second Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, even without citing chapter and verse of the Constitution, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court.

See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3. *Procedural Default*

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and

regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376). The Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

4. *Standard of Review*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). When reviewing petitions filed subsequent to AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154–55 (2d Cir. 2007). "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

**B.      Petitioner's Involuntary Confession Claim is Procedurally Barred**

Petitioner seeks habeas relief on the ground that his confession was not voluntarily given. As discussed above, petitioner initially challenged the voluntariness and admissibility of his confession at the pre-trial hearing. The trial court found his confession was obtained voluntarily and denied his motion to suppress any statements. Petitioner thereafter accepted a plea agreement, waiving his appeal rights specifically including his right to challenge any pre-trial hearing decisions and his right to file a habeas corpus petition. Petitioner then presented his challenge to the voluntariness of his statement to the Appellate Division, Third Department. As discussed above, the Appellate Division expressly held that review of the County Court's suppression ruling was precluded by defendant's waiver of his right to appeal. People v. Junior, 947 N.Y.S.2d 919 (2012). The New York Court of Appeals denied leave to appeal. People v. Junior, 955 N.Y.S.2d 559 (2012).

A state court's reliance upon a defendant's affirmative waiver of his right to appeal constitutes an independent and adequate state procedural bar upon which to deny a claim for habeas relief. See Haynes v. New York, No. 10-CV-5867, 2012 WL 6675121, at *8 (E.D.N.Y.

Dec. 21, 2012)(citing Colon v. New York, No. 08 Civ. 0170 DC, 2009 WL 1116478, at *4 (S.D.N.Y. Apr. 27, 2009) and Gordon v. Poole, No. 07–CV–474, 2008 WL 495510, at *3 (W.D.N.Y. Feb. 21, 2008)).[4] See also Riley v. Goord, No. 02 Civ 5884 DC, 2003 WL 22966278, at *6 (S.D.N.Y. Dec. 16, 2003) (denying confrontation and due process claims on grounds that defendant waived his right to appeal in accepting his plea agreement).

However, the state court's enforcement of an appeal waiver constitutes an "adequate" state procedural bar only if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe, 433 F.3d at 241 (internal quotation and citation omitted). Additionally, pursuant to the second *Cotto* guidepost, the court must assess whether New York state case law requires application of the procedural bar "in the specific circumstances presented." Cotto, 331 F.3d at 240.

Under New York law, an order denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty. N.Y. Crim. P. L. § 710.70. However, this right can be waived pursuant to a plea agreement. The New York Court of Appeals has expressly held that where a plea is voluntarily entered into, with full comprehension on defendant's part of both the plea and the associated condition, a defendant may be held to the waiver of his right to appeal from the denial of his suppression motion. People v. Williams, 36 N.Y.2d 829, 830 (1975). See also People v. Kent, 94 N.Y.2d 831 (1999).

Here, after the trial court found petitioner's confession to be voluntary and admissible, petitioner entered into a plea agreement and waived his right to appeal. Petitioner has not

---

[4] Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to petitioner. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

challenged the voluntariness of his plea or waiver but rather only challenges the underlying voluntariness of his confession. Because New York State has firmly established and regularly followed the rule that plea agreements containing waivers of appeal rights will be enforced, petitioner's wavier provides an independent and adequate state procedural bar upon which to deny habeas relief.

Petitioner can overcome the procedural bar by demonstrating cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or by showing that failure to consider the claims will result in a fundamental miscarriage of justice. However, petitioner has failed to make any such showing.

### IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be **DENIED**. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   March 5, 2015
         White Plains, New York

                                    Respectfully submitted,

                                    _____
                                    Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Nelson Stephen Román, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Román.

A copy of this Report and Recommendation has been mailed to:

Herbert Junior
10A4575
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821-0051